# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

JOHN TRUSCHKE,

        Plaintiff,

    v.

NURSE CHANEY, et al.,

        Defendants.

CIVIL ACTION NO.: 5:17-cv-93

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently housed at Coffee Correctional Facility ("CCF") in Nicholls, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983. (Doc. 1.) For the reasons set forth below, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims for deliberate indifference to medical needs as to Defendants Augustin and Chaney's failure to release Plaintiff's medical records and **DISMISS** Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone in their entirety. Additionally, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis* as to his claims against Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone. However, Plaintiff's allegations arguably state colorable claims for relief against Defendants Augustin, Chaney, and Bell. Accordingly, the Court **DIRECTS** the United States Marshal to serve these Defendants with a copy of Plaintiff's Complaint, (doc. 1), and this Order.

## PLAINTIFF'S ALLEGATIONS[1]

On February 6, 2017, Plaintiff injured his leg after a head-on collision with another inmate. (Id. at p. 6.) Immediately following the incident, Plaintiff was taken to CCF's medical

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

unit and examined by Defendant Chaney. (Id. at p. 7.) Defendant Chaney notified the Douglas County ER, and Plaintiff was transported there for treatment. (Id.) Following an x-ray examination, an ER doctor diagnosed Plaintiff with a broken knee, provided an immobility brace, and prescribed "an MRI immediately to assess further damage . . . as well as to have a consultation with an orthopedic surgeon – both were noted as being critical and needed to be done immediately." (Id. at pp. 7–8.) Plaintiff did not immediately receive this MRI but was taken to see Dr. Barber, an orthopedic surgeon, on February 17, 2017. (Id. at p. 12.) Dr. Barber could not provide any further treatment without MRI results and reiterated the necessity of an immediate MRI. Plaintiff did not receive an MRI until March 6, 2017. (Id. at p. 16.)

Immediately after receiving his MRI, Plaintiff was transferred to the Williamson County Sheriff's Department in Franklin, Tennessee, to "face outstanding charges in the state of Tennessee." (Id. at p. 16.) However, Plaintiff states that he was sent there three to four weeks earlier than scheduled. (Id.) While there, Williamson County Jail personnel attempted to retrieve Plaintiff's medical files but were unable to do so. (Id. at p. 17.) On April 19, 2017, Plaintiff was transferred back to CCF. (Id. at p. 18.)

Sometime in April 2017, Dr. Barber advised Plaintiff that he could no longer perform surgery on Plaintiff's leg because the delay had caused Plaintiff's bones to set. (Id. at p. 19.) On April 26, 2017, Plaintiff saw Dr. Gaines, an orthopedic surgeon specializing in re-break surgeries. (Id. at pp. 19–20.) Dr. Gaines advised Plaintiff that he would have to do six weeks of physical therapy before surgery because his knee had set incorrectly from the delay and lack of treatment. (Id. at p. 20.) Plaintiff alleges that, despite this directive, Plaintiff has not had any type of physical therapy. (Id.)

Plaintiff further alleges that during the entirety of this three-month period, CCF officials and medical staff failed to provide appropriate care for his injury. In particular, Plaintiff claims that Defendants failed to provide proper treatment, even after it had been prescribed by outside doctors, including allowing him to use a wheelchair, providing prescribed pain medication, and entering non-standing profiles. (Id. at pp. 15–16.)

Plaintiff seeks compensatory damages, punitive damages, and an injunction to "ensure that the Defendant(s) as well as the facility . . . [will not] attempt[] any type of retaliation against Plaintiff . . . ." (Id. at p. 25.)

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . .

a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never

suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.      Deliberate Indifference to Medical Needs

A deliberate indifference claim requires analysis of the Eighth Amendment proscription against cruel and unusual punishment.  That proscription imposes a constitutional duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

Thus, in order to prove a deliberate indifference to medical care claim, similar to any other deliberate indifference claim, a prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct."  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).  As to the first component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting

Hill, 40 F.3d at 1187). Under the second, subjective component, the Eleventh Circuit has

consistently required that "a defendant know of and disregard an excessive risk to an inmate's

health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the

subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious

harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v.

Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[2]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a

decision to take an easier but less efficacious course of treatment; and (3) medical care that is so

cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th

Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons"

or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit

deliberate indifference. Id. (citations omitted).

In instances where a deliberate indifference claim turns on a delay in treatment rather

than the type of medical care received, the Court considers "the reason for the delay and the

nature of the medical need." Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (citing

McElligott, 182 F.3d at 1255). When a claim turns on the quality of treatment provided,

however, "'a simple difference in medical opinion between the prison's medical staff and the

inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate

---

[2]  Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007), with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two unpublished Eleventh Circuit cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in Melton, this Court will apply the "more than mere negligence" standard.

indifference." <u>Melton</u>, 841 F.3d at 1224 (quoting <u>Harris</u>, 941 F.2d at 1505).  In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." <u>Hamm v. DeKalb Cty.</u>, 774 F.2d 1567, 1575 (11th Cir. 1985).

### A. Medical Defendants

#### (1) Dr. Augustin

Plaintiff alleges sufficient facts to support a claim of deliberate indifference to medical needs against Defendant Augustin, the treating doctor at CCF.  Plaintiff claims that, despite the Douglas ER doctors specifically prescribing an immediate MRI, use of a wheelchair, and pain medications, Defendant Augustin failed to timely schedule an MRI, specifically directed medical staff not to provide a wheelchair, and refused to provide the prescribed pain medications because "she believed [the pain medications] to be unnecessary and costly." (Doc. 1, p. 13; <u>see also</u> <u>id</u>. at pp. 9, 14, 15, 17, 20–21, 23–24.)  Additionally, Plaintiff alleges that Defendant Augustin refused to refer him to physical therapy, even after Dr. Gaines set it as a precondition for re-break surgery.  (<u>Id.</u> at pp. 20–21, 24.)  Plaintiff contends that these actions exacerbated his injury and caused him unnecessary pain.  Thus, Plaintiff's allegations support his claim that Defendant Augustin acted with more than mere negligence in failing to provide adequate medical care and refusing to follow the treatment plans from outside doctors.

However, Plaintiff's claims against Defendant Augustin for failing to provide medical records to Williamson County Jail officials are without merit.  (<u>Id.</u> at pp. 23–24.)  Plaintiff does not allege that this failure prevented appropriate medical treatment while he was housed at the jail or that jail staff would have been able to provide his required surgery with the medical files.

(Id. at pp. 17–18.)  Consequently, the Court should **DISMISS** Plaintiff's claims for deliberate indifference to medical needs as to Defendant Augustin's failure to release his medical records.

### (2)    Nurse Chaney

Plaintiff's allegations against Defendant Chaney, the head nurse at CCF, are similar to those against Defendant Augustin: refusal to provide a wheelchair, order an MRI, or order physical therapy.  (Id. at pp. 15, 20–21, 23–24.)  As noted above, this failure to provide proper treatment for Plaintiff's leg, much less the treatment prescribed by the doctors at the Douglas ER and by Dr. Gaines, sufficiently states a claim for deliberate indifference.

However, Plaintiff's allegations against Defendant Chaney for her post-accident examination and failure to release his medical records to Williamson County Jail officials do not state a viable Section 1983 claim.  (Id. at pp. 7–8, 23–24.)  Defendant Chaney provided immediate medical care when she realized the severity of Plaintiff's injuries by contacting and transferring Plaintiff to the Douglas ER.  (Id.)  Additionally, similar to the analysis for Defendant Augustin, Plaintiff does not allege that Defendant Chaney's failure to release his medical records prevented appropriate treatment from Williamson County Jail officials.  (Id. at pp. 17–18.)  Thus, the Court should **DISMISS** Plaintiff's deliberate indifference claims against Defendant Chaney regarding her actions in the immediate aftermath of Plaintiff's accident and for failing to release Plaintiff's medical records.

### (3)    Nurse Bell

Plaintiff claims Defendant Bell acted deliberately indifferent by refusing to enter the appropriate prison profile for him, even though she knew of his medical needs.  (Id. at pp. 9–10.)  Specifically, Plaintiff claims that as a result of Defendant Bell's actions, Plaintiff was unable to notify other correctional staff of his need for, among other things, a limited standing profile and

delivered meals. (Id.) Plaintiff also alleges that Defendant Bell delayed his MRI examination and refused to provide him with a wheelchair. (Id. at pp. 15, 23). Plaintiff contends that all of these actions contributed to his delay in receiving surgery and exacerbated his condition.

These facts support Plaintiff's claims that Defendant Bell was deliberately indifferent to his medical needs by failing to provide appropriate treatment and "knowingly interfer[ing] with a physician's prescribed course of treatment." Bingham, 654 F.3d at 1176 (citations omitted).

### B. Non-Medical Defendants

An Eighth Amendment "medical treatment claim [will] not lie against non-medical personnel unless they were personally involved in the denial of treatment or deliberately interfered with prison doctors' treatment. Prison officials are entitled to rely on the opinions, judgment and expertise of a prison medical staff to determine a medically necessary and appropriate cause of treatment for an inmate." Baker v. Pavlakovic, No. 4:12-CV-03958-RDP, 2015 WL 4756295, at *7 (N.D. Ala. Aug. 11, 2015) (citing Williams v. Limestone Cty., 198 F. App'x 893, 897 (11th Cir. 2006)). "[It] is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the medical staff and are not required to second-guess the medical staff's judgment regarding an inmate's care." Stallworth v. Graham, No. 4:14-CV-00134-RDP, 2015 WL 4756348, at *5 (N.D. Ala. Aug. 11, 2015) (quoting Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals[.]"), and Kelly v. Ambroski, 97 F. Supp. 3d 1320, 1343 (N.D. Ala. 2015) ("[I]n the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical

prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference[.]")).

### (1) Warden Hall

Plaintiff alleges that Defendant Hall was deliberately indifferent to his medical needs by delaying approval for his MRI, (doc. 1, p. 23), failing to provide him with a wheelchair, (id. at p. 14), transferring him to Tennessee, (id. at pp. 17, 23), and refusing to turn over his medical records to Williamson County Jail officials, (id.).

As to the MRI claims, Plaintiff submits that Defendant Hall should be held liable because he is part of a "systematic failure . . . at the prison and up the chain of command" for delaying approval for Plaintiff's MRI based on "red tape" and "cost." (Id. at p. 23.) However, aside from these conclusory statements, Plaintiff fails to provide any specific facts indicating whether Defendant Hall knew Plaintiff needed an MRI or had any authority to order an MRI.

Similarly, Plaintiff fails to allege facts demonstrating Defendant Hall's deliberate indifference to Plaintiff's medical needs by failing to obtain a wheelchair. Indeed, Plaintiff indicates that, when he requested a wheelchair from Defendant Hall, Defendant Hall approved both the wheelchair and a transfer to a building closer to medical. (Id. at p. 14.) Although Plaintiff continues to say that he ultimately did not receive the wheelchair or stay very long in the reassigned building, he fails to allege that either of these incidents occurred because of Defendant Hall. (Id.)

Plaintiff's claims regarding his transfer to Williamson County Jail are also without merit. Plaintiff implies that Defendant Hall transferred Plaintiff to the jail earlier than necessary to avoid providing medical care. (Id. at pp. 16, 23–24.) While Plaintiff asserts that the "timing [of his transfer] is curious" because it occurred immediately after he received his MRI results,

Plaintiff fails to allege whether Defendant Hall was responsible for this transfer or even knew that Plaintiff had received the results of his MRI. (Id. at p. 16.)[3]

Plaintiff's claims regarding the production of his medical records fail for similar reasons. Plaintiff alleges that Defendant Hall was deliberately indifferent by refusing to provide his medical records to jail officials once Plaintiff was transferred. However, Plaintiff fails to allege whether Defendant Hall knew of the request for medical records, had access to them, or was responsible for making the decision to withhold them.

Thus, the Court should **DISMISS** Plaintiff's claims against Defendant Hall in their entirety.

### (2) C/C Andrews

Similar to Plaintiff's claims against Defendant Bell, Plaintiff alleges that Defendant Andrews was deliberately indifferent to his medical needs for failing to incorporate his medical file into a proper prison profile. (Id. at pp. 9–10.) However, Plaintiff does not indicate whether Defendant Andrews had access to Plaintiff's medical file or even had the ability to enter a profile for Plaintiff's requests.

Plaintiff also states that "C/C Andrews was present" during Plaintiff's conversation with Defendant Hall regarding a wheelchair and moving Plaintiff to a closer building. (Id. at p. 14.) However, this statement is insufficient to support Plaintiff's claim that Defendant Andrews was deliberately indifferent by failing to provide a wheelchair. As stated earlier, Plaintiff does not claim that Defendant Andrews was the reason he did not get a wheelchair or even knew that Plaintiff did not receive a wheelchair after Defendant Hall had approved it.

---

[3] Additionally, prisoners do not have a constitutional right to remain at a particular penal institution. <u>See Adams v. James</u>, 784 F.2d 1077, 1079 (11th Cir. 1986). Although "prison officials may not transfer . . . an inmate in retaliation for exercising his right to file grievances against prison officials[,]" Plaintiff does not allege that this occurred. <u>Nichols v. Riley</u>, 141 F. App'x 868, 869 (11th Cir. 2005).

Accordingly, the Court should **DISMISS** Plaintiff's deliberate indifference to medical needs claims against Defendant Andrews.

### (3)    C/O Preston, Captain Blaine, C/O Bages, and D. Stewart

Plaintiff's claims against Defendants Preston, Blaine, Bages, and Stewart are also without merit.  Plaintiff alleges that Defendants Preston and Blaine, at various points, were deliberately indifferent to his medical needs by failing to provide a wheelchair.  (Id. at pp. 9–10, 11.) However, Plaintiff did not have a profile for a wheelchair and fails to allege that these Defendants otherwise knew he required a wheelchair.  (Id. at p. 9.)  Instead, Plaintiff's Complaint reveals that Defendants Preston and Blaine properly "rel[ied] on the opinions, judgment, and expertise" of CCF medical staff who determined that Plaintiff—already prescribed crutches and a knee immobilizer—did not need a wheelchair.  Baker, 2015 WL 4756295, at *7.  Furthermore, it would not have been apparent to these Defendants that medical did not provide adequate care in only prescribing crutches.[4]  Although Plaintiff claims that a "Ms. Cheatem" observed his "difficulty moving down the hall, and asked why he wasn't in a wheelchair," Plaintiff fails to allege that any of these Defendants observed the same.  (Doc. 1, p. 11.)

As to Defendant Bages, Plaintiff fails to make any assertions that she was deliberately indifferent to his medical needs.  Plaintiff appears to claim that Defendant Bages prevented him from seeing the sick call nurse because she "had to use the bathroom . . . and instead of asking to have someone come and relieve her, she told me I had to . . . return to my unit . . . so she could

---

[4]  Although Plaintiff asserts that Defendant Preston was present during his second appointment with Dr. Barber regarding the necessity of a re-break surgery, this fact does not show that Defendant Preston knew that crutches were inadequate.  (Doc. 1, p. 12.)  In fact, Plaintiff only mentions that Dr. Barber told him to not "put any weight or pressure upon his right knee/leg" or walk on it.  (Id.)  He does not say that Dr. Barber required Plaintiff to use a wheelchair instead of crutches.  Thus, Defendant Preston properly relied on CCF medical staff when they provided Plaintiff with crutches instead of a wheelchair.

use the bathroom." (Id. at p. 15.)  These allegations are insufficient to support any claim for deliberate indifference.

Accordingly, the Court should **DISMISS** Plaintiff's claims against Defendants Preston, Blaine, Bages, and Stewart in their entirety.[5]

## III.    Deliberate Indifference to Conditions of Confinement

Plaintiff's claims that Defendants Bell and Andrews refused to deliver his meals also triggers the Eighth Amendment.  However, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted).  Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  The Constitution does not mandate comfortable prisons.  Id.  Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities."  Id. at 347.

Like the test for deliberate indifference to medical needs, a Plaintiff "must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (citation and quotation omitted).  "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Purcell, 400 F.3d at 1319–20).

---

[5]  Plaintiff fails to include any allegations against Defendant Stewart.  In fact, other than as a listed Defendant, Defendant Stewart's name does not appear anywhere else in the Complaint.  Thus, for this reason, the Court should also **DISMISS** Defendant Stewart.  See Iqbal, 556 U.S. at 678; Fed. R. Civ. P. 8.

Plaintiff alleges that Defendant Bell refused to enter an appropriate prison profile for his medical needs, including the necessity of delivered meals. (Doc. 1, pp. 9–10.) As a result Plaintiff went "without most of his meals for 9 days . . . [because] if he attempted to move around . . . he experienced severe pain, and his knee became swollen . . . ." (Id. at p. 10.) Although it is unclear how much food Plaintiff received, at this stage of the litigation, Plaintiff provides sufficient facts to support his claim that Defendant Bell was deliberately indifferent to the risk that Plaintiff would be unable to obtain food. Plaintiff claims Defendant Bell "ignored putting his profiles into the OMS system," and therefore, Plaintiff was unable to provide "an OMS for the correctional staff" to deliver his meals. (Id. at p. 10.) Consequently, Plaintiff provides sufficient facts to support a plausible condition of confinement claim against Defendant Bell.

However, Plaintiff cannot pursue those same claims against Defendant Andrews. Although Plaintiff claims that Defendant Andrews ignored his requests and "would not help Plaintiff obtain his meals," (id.), Plaintiff has not adequately alleged that Defendant Andrews "acted with a sufficiently culpable state of mind." Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Chandler, 379 F.3d at 1289–90). Plaintiff simply states that he notified Defendant Andrews that "a profile [would be] added to his OMS . . . to have his meals brought to him in his unit," but no such profile was ever entered. (Doc. 1, p. 9.) Plaintiff fails to allege that Defendant Andrews was otherwise notified that Plaintiff could not obtain food and still refused to provide it. Thus, the Court should **DISMISS** Plaintiff's conditions of confinement claims against Defendant Andrews.

## IV.    Denying Grievances

Plaintiff claims that Defendant Stone is responsible for his injuries because he "signed off on grievances without regard to Plaintiff's medical needs . . . ." (Id. at p. 24.)  However, this basis of liability is insufficient under Section 1983.  "An allegation that prison officials denied grievances does not 'support a finding of constitutional violations on the part of' those defendants."  Gresham v. Lewis, No. 6:15-CV-86, 2016 WL 164317, at *3 (S.D. Ga. Jan. 13, 2016) (citing Bennett v. Sec'y, Fla. Dep't of Corr., No. 4:12CV32-MP/CAS, 2012 WL 4760856, at *1 (N.D. Fla. Aug. 27, 2012), *report and recommendation adopted*, No. 4:12-CV-00032-MP-CAS, 2012 WL 4760797 (N.D. Fla. Oct. 2, 2012) (quoting Raske v. Dugger, 819 F. Supp. 1046, 1054 (M.D. Fla. 1993)); see also Ludy v. Nelson, No. 5:14-CV-73-MTT-CHW, 2014 WL 2003017, at *3 (M.D. Ga. Apr. 18, 2014), *report and recommendation adopted*, No. 5:14-CV-73 MTT, 2014 WL 2003096 (M.D. Ga. May 15, 2014) ("However, the mere fact that a prison official denies a grievance is insufficient to impose liability under § 1983.") (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009), and Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005)).  Thus, Plaintiff cannot state a claim against Defendant Stone for "signing off" on grievances.

Furthermore, Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations.  Id. at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his

constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." <u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011).

Insofar as Plaintiff seeks to hold Defendant Stone liable based merely on his position as assistant warden, Plaintiff may not do so. Plaintiff's Complaint is devoid of any allegation that Defendant Stone was personally involved in or otherwise causally connected to the alleged violations of Plaintiff's constitutional rights. For these reasons, the Court should **DISMISS** Plaintiff's claims against Defendant Stone.

## V. Request for Preliminary Injunction

Plaintiff seeks preliminary injunctive relief from the Court to prevent Defendants "from attempting any type of retaliation against Plaintiff, including, but not limited to transfer, tampering with legal mail, or any other unwarranted disciplinary actions." (Doc. 1, p. 25.) To receive a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." <u>Horton v. City of Augustine, Fla.</u>, 272 F.3d 1318, 1326 (11th Cir. 2001).[6]

---

[6]    Additionally, absent a clear abuse of discretion, the Court is reluctant to interfere with prison administration and discipline. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 404–05 (1974) ("Traditionally,

Plaintiff fails to establish that he is entitled to a preliminary injunction at this stage. Specifically, Plaintiff has not demonstrated a substantial likelihood of success on the merits of his claims. Accordingly, the Court should **DENY** Plaintiff's request for a preliminary injunction. This is not to say that Plaintiff may not obtain injunctive relief at some other stage of this proceeding. However, at this time, the Court should not provide such an extraordinary remedy.

## VI.    Leave to Appeal *in Forma Pauperis*

Should the Court accept my recommendation to dismiss Plaintiff's claims against Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone, the Court should also deny Plaintiff leave to appeal *in forma pauperis* as to those Defendants. Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or

---

federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims against Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to those Defendants.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for deliberate indifference to medical needs as to Defendants Augustin and Chaney's failure to release his medical records and **DISMISS** all claims against Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone. Additionally, the Court should **DENY** Plaintiff's claims for a preliminary injunction and **DENY** Plaintiff leave to appeal *in forma pauperis* as to his claims against Defendants Hall, Andrews, Preston, Blaine, Bages, Stewart, and Stone.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

As stated above, Plaintiff arguably states colorable claims for deliberate indifference to medical needs as to Defendants Augustin, Chaney, and Bell, and for deliberate indifference to a condition of confinement against Defendant Bell. Consequently, a copy of Plaintiff's Complaint, (doc. 1), and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the defendant by first-class mail and request that the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

**INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff also has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, et seq. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local R. 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a defendant. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact counsel for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses

to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should Defendants' motion for

summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA